IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE

| | |
|---|---|
| UNITED STATES of AMERICA | ) |
| | ) |
| v. | ) No. 2:11-cr-87 |
| | ) |
| RICHARD ERLING KELLY | ) District Judge GREER |

## UNITED STATES' SENTENCING MEMORANDUM

The United States of America, by and through William C. Killian, United States Attorney for the Eastern District of Tennessee, submits that the presentence report for RICHARD ERLING KELLY correctly describes the pertinent sentencing factors of 18 U.S.C. § 3553(a), the correct, advisory guideline calculation of 33 to 41 months incarceration, and correct criminal history level calculation of III. Restitution is not a consideration and the defendant has no present ability to pay a fine. The following subdivisions of 18 U.S.C. § 3553(a) are relevant to sentencing. As stated below, the United States has asked the Court to vary upwardly one level and recommends a sentence of 46 months in prison and supervised release for the remainder of Kelly's life.

**1a. The nature and circumstances of the offense.**

Richard Erling Kelly is a native of Norway who is a naturalized American citizen. On April 18, 1990, he pled guilty to one count of sexual assault in

1

Flagstaff, Coconino County, Arizona. The sentencing judge ordered Kelly to serve fourteen years in Arizona prison and noted that "this is an aggravated sentence based on his prior record of similar offenses; that the Court strongly recommends that the Board of Probation and Parole deny parole; and that the defendant used a rock during the commission of the crime." Kelly's victim was a 32-year-old woman. He was released from Arizona prison on August 17, 2003.

Prior to his release from Arizona prison in 2003, Kelly was committed to the Arizona State Hospital for treatment and evaluation pursuant to Arizona's Sexually Violent Predator statutes. When he was transported off the hospital grounds to attend a counseling meeting on January 14, 2005, Kelly escaped and fled to New Orleans, Louisiana. He remained in a fugitive status until he was arrested on February 1, 2009 during a traffic stop; after being convicted of violating Arizona's Sex Offender Registry Law on July 10, 2009, Kelly was then released to community supervision on November 25, 2009.

On December 22, 2010, Kelly reported to the New Orleans, Louisiana Police Department and registered as a sex offender. When Detective Raymond Hughes of the New Orleans Police Department registered Kelly, he learned that Lawrence County, Arkansas had a warrant for Kelly related to outstanding marijuana charges and failure to appear at a court proceeding. The authorities in Arkansas were

willing to extradite Kelly, so Hughes arrested Kelly and took him into custody where he was eventually transferred to Lawrence County, Arkansas and he was convicted of possessing controlled substances.

Kelly was required to register annually with law enforcement in Louisiana pursuant to the Louisiana Sex Offender Registry Law. Kelly appeared before the New Orleans Police Department on March 21, 2011; April 14, 2011; May 18, 2011; and June 8, 2011. Each time, Kelly provided his current living situation, which changed several times. On June 8, 2011, Kelly told the New Orleans Police Department that he intended to move to 3533 Hickory Hill Road in Memphis, Tennessee.

In July, 2011, the New Orleans Police Department followed up with the Memphis Police Department to determine whether Kelly had registered with the Memphis Police Department. The Memphis officers determined that Kelly had not registered with Tennessee authorities and determined that the Hickory Hill address was the address for a Town Suites Extended Stay Hotel in east Memphis. The innkeeper at Town Suites confirmed that no one named Richard Erling Kelly or meeting his description had registered as a guest at the location on Hickory Hill Road and its sister hotel located a mile away. When the Louisiana State Police received this information, it prepared a complaint and issued a warrant for Kelly's

arrest for violating the Louisiana Sex Offender Registry Law.

The Louisiana State Police requested assistance from the Marshals Service. Kelly had included information about his girlfriend Pedrina Martinez and her car in his New Orleans registrations. The Sheriff's Office in Cocke County, Tennessee observed a car with the same description and tag from Arkansas parked at a Housing Authority apartment complex at 339 Alex Street in Newport, Tennessee. Officers from the Marshals Service and the Sheriff's Office conducted a knock and talk on August 30, 2011; soon after they knocked, Pedrina Martinez fled out the back door and Kelly was located in the apartment.

According to Kelly, he and Martinez had lived together for several months. When they left New Orleans, they attended the Bonnaroo Music Festival in Coffee County and remained there until July 4, 2011 when they drove to Cosby, Cocke County, Tennessee. From July 4, 2011 to his arrest on August 30, 2011, Kelly lived in Martinez' van and drove to different towns in the Eastern District of Tennessee including Gatlinburg and Knoxville. Pedrina Martinez obtained public housing in early August 2011 and he stayed with her for days at a time during this period. Kelly's clothes, guitar, and other personal effects were found in Martinez' apartment. Martinez and her five-year-old son lived at the apartment.

4

Case 2:11-cr-00087-JRG-MCLC   Document 59   Filed 11/27/12   Page 4 of 13   PageID #: 203

Kelly's predicate offense of sexual assault required him to register annually with law enforcement authorities in Arizona for ten years from the date of his release from prison on August 17, 2003. A.R.S. § 13-3821(A)(5) and (M). Arizona law required Kelly to provide notice of his intent to move out of state at least 72 hours before he moved. A.R.S. § 13-3822. Violation of the Arizona Sex Offender Registry Law is a Class 4 felony.

Under the Louisiana Sex Offender Registry Law, Kelly was required to register annually with law enforcement. La. R.S. § 15:542, § 15:542.1.1, and § 15:542.1.3. He was required to report any change in his residency within three days after it occurred. La. R.S. § 15:542.1.2. Violation of the Louisiana Sex Offender Registry Law imposes a potential term of imprisonment of two years.

Tennessee law required he register with Tennessee authorities within 48 hours after he entered the State of Tennessee and register for life. T.C.A. § 40-39-203 and § 40-39-207.

Litigation History

The grand jury returned a one-count indictment against the defendant on October 12, 2011. The Magistrate Judge arraigned the defendant on October 31, 2011 and appointed Assistant Community Defender Tim Moore to represent him. The United States provided its discovery on October 31, 2011 and sent a proposed

plea agreement to defendant's counsel on November 1, 2011. On December 27, 2011, defendant filed a *pro se* motion to appoint new counsel. The district court conducted a hearing on the motion on January 9, 2012 and granted it, appointing Jerry J. Fabus, Jr. as counsel. The United States sent a proposed plea agreement to Mr. Fabus on January 13, 2012. On March 26, 2012, Mr. Fabus filed a motion to dismiss the indictment, alleging constitutional grounds. The Magistrate Judge conducted a motions hearing on April 5, 2012 and issued a report and recommendation that the motion to dismiss indictment be denied on April 5, 2012.

On April 16, 2012, the defendant filed a Notice of Intent To Plead Guilty, which was apparently conditional on defendant's right to appeal any sentence imposed by the Court. The district court conducted a hearing on April 16, 2012 regarding the defendant's change of plea to guilty. The parties submitted a written factual basis for purposes of the guilty plea on April 16, 2012. The defendant objected to the Report and Recommendation of the Magistrate Judge's on April 19, 2012. On April 26, 2012, the United States filed a written response to the defendant's proposal to enter a conditional plea of guilty without benefit of a written plea agreement. The district court denied the defendant's motion to dismiss on April 30, 2012 and adopted the Magistrate Judge's report and recommendation.

6

On May 15, 2012, defendant filed a notice of intent to stipulate an element of the offense pursuant to *Old Chief*. (R. 44).[1] This was the first indication undersigned counsel received that Kelly had withdrawn his notice of intent to plead guilty. On Friday, May 18, 2012, the United States sent Mr. Fabus a proposed written plea agreement which preserved the defendant's right to challenge the constitutionality of the charging statute but otherwise waived his appeal rights. The United States alternatively suggested that Mr. Kelly waive his right to a jury trial and consent to a bench trial. The defendant then withdrew his guilty plea and the case proceeded to trial on May 24, 2012.

Prior to trial, the district court conducted a short hearing on May 24, 2012, noting that the United States had proposed and offered four different plea agreements to the defendant, on November 1, 2011; January 9, 2012; January 13, 2012; and May 18, 2012. In accordance with *United States v. Lafler*, the district court described to the defendant the risks and benefits which accrued with rejection of the plea agreements and affirmed that the defendant made the decision to proceed to trial.

---

[1]Magistrate Judge Inman granted Kelly's pretrial motion for leave to stipulate the first element of the offense, subject to the United States' need to submit the prior registration documents (which all mention the predicate offense) to establish his knowledge of the duty to register.

7

At trial, Kelly's defense rested on the third element of the offense: he claimed that the United States could not prove that he knowingly failed to register or update his sex offender registration.[2] The jury returned a verdict of guilty on May 24, 2012. The defendant maintained his argument that he did not knowingly fail to register in his motion for judgment of acquittal.

### 1b. The history and characteristics of the defendant.

The defendant has accumulated numerous sex offense convictions, starting in 1974 at age 18: attempted rape of a thirteen-year-old child; 1982 conviction at age 26 for fourth degree sexual assault of a female under the age of sixteen; 1989 conviction at age 33 for sexual assault; and a 2009 conviction at age 52 for failure to register as a sex offender. In addition, Kelly has been convicted of grand larceny; assault and battery with intent to kill; felony escape; and possession of controlled substances with intent to distribute. Kelly has no verifiable history of gainful employment.

The defendant does not accept authority well, as demonstrated by his behavior in this prosecution. His numerous convictions for sex offender registry violations demonstrates his inability to conform his behavior to laws.

---

[2] Undersigned counsel's notes indicate that Mr. Fabus stated the following during opening argument: "Defendant will testify. Defendant conceded element #2; they really only contest element #3. He did not get registered, but he did not knowingly not register. He failed to register because of mistake or accident."

8

**2A. The need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.**

While failing to register as a convicted sex offender is not the most serious type of offense, it is clear that the need to promote respect for the law and to provide just punishment for the offense is great. Kelly simply will not conform his behavior to the sex offender registration laws, even though he is fully informed of the law, knows how to comply, and in fact, has complied with the law. Kelly wants the freedom to travel and move without registration; the sex offender registration laws mandate that he notify members of each community he enters. In his instance, his extremely violent past behavior underscores the importance of the sex offender registration laws.

**2B. The need for the sentence imposed to afford adequate deterrence to criminal conduct.**

The Court should consider general deterrence (as to unregistered sex offenders in general) and specific deterrence (as to Kelly alone) when it imposes sentence on Kelly; the United States respectfully submits that the need for deterrence is great.

**2C. The need for the sentence imposed to protect the public from further crimes of the defendant.**

The pre-sentence report addressed this factor.

9

**2D.	The need for the sentence imposed to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.**

The pre-sentence report addressed this factor.

**3.	The kinds of sentences available.**

The probation officer has correctly described the sentencing options available.

**4.	The kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines.**

The pre-sentence report addressed this factor. The United States respectfully submits that the Court should order Kelly to remain on supervised release for the remainder of his life.

**5.	Pertinent policy statement.**

There is no pertinent policy statement cited by the United States.

**6.	The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.**

The PSR addressed this issue.

**7.	The need to provide restitution and order a monetary fine.**

The PSR addressed this issue.

### 8. The Court should vary upwardly because the defendant's criminal history category does not adequately reflect the seriousness of his past criminal conduct or the likelihood of recidivism.

The defendant has accrued a criminal history category point total of six, which placed him in Criminal History Category III. However, Kelly's criminal history category was unaffected by several violent and serious convictions which were outside the lookback period, including the 1974 conviction for rape of a thirteen-year-old child, assault and battery with intent to kill in 1977; and fourth degree sexual penetration upon a victim under the age of sixteen in 1982. The defendant's multiple convictions for violations of state sex offender registry laws demonstrates he is a high risk of recidivism to continue violating sex offender registration laws. In addition, the defendant has established a consistent history of non-acceptance of responsibility for his behavior which continued in his behavior during this prosecution.

For these reasons, and to deter recidivism by Richard Kelly, the United States respectfully urges the Court to vary upwardly in accordance with 18 U.S.C. § 3553(a) by one level to an advisory range of 37 to 46 months and to impose a sentence of 46 months.

## SUMMARY

The advisory guideline range for the defendant is thirty-three months to forty-one months imprisonment. The United States respectfully submits that the Court should vary upwardly by one level and should sentence the defendant to serve 46 months incarceration to reflect the seriousness of his criminal conduct, to deter his behavior, and to deter his recidivism. A sentence which ensures that the defendant receives federal supervision for the remainder of his life is clearly needed.

In accordance with 18 U.S.C. § 3583(d), the Court should impose as a special condition of probation the requirements set forth in U.S.S.G. § 5B1.3(a)(9) and should require the defendant to provide his supervising probation officer with proof of his compliance. The United States submits that the Court should also impose the following special conditions of supervised release under Local Rule 83.10(b): (1); (4); (5); (6); (7); (8); (9); and (10). The defendant lacks the financial ability to pay a fine.

This sentence is sufficient but not more than necessary to reflect the nature and circumstances of the offense, the history and characteristics of the defendant, the seriousness of the offense, to afford adequate deterrence, and to protect the public from further crimes perpetrated by the defendant.

RESPECTFULLY SUBMITTED,

WILLIAM C. KILLIAN
United States Attorney

By: *s/ Helen C.T. Smith*
Helen C.T. Smith
Assistant United States Attorney

Certificate of Electronic Filing and Service

    I certify that I electronically filed the foregoing sentencing memorandum on November 27, 2012. Jerry J. Fabus, Jr., the defendant's attorney will receive a copy of the pleading via the court's electronic notice system. In accordance with the Court's order, I have provided a copy of the memorandum to the probation officer who prepared the presentence report.

*s/ Helen C.T. Smith*