UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

RICHARD ERELING KELLY,           )
                    Petitioner,  )
                                 )
        v.                       )        Nos.  2:11-CR-87
                                 )               2:15-CV-62
UNITED STATES OF AMERICA,        )
                    Respondent.  )

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the motion of Richard Erling Kelly, ("Kelly" or "petitioner"), to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, [Doc. 100],[1] his supplemental motion, [Doc. 113], the government's response in opposition, [Doc. 118], and Kelly's reply brief, [Doc.121]. The matter is now ripe for disposition. The Court has determined that the files and records in the case conclusively establish that the petitioner is not entitled to relief under § 2255 and that neither an evidentiary hearing nor the appointment of counsel is necessary. For the reasons which follow, the petitioner's § 2255 motion lacks merit, the motion will be DENIED, and the § 2255 case DISMISSED.

## I.    Factual and Procedural Background

Kelly was indicted by a federal grand jury on October 12, 2011, in a one count indictment and charged for failure to register under the Sex Offender Registration and Notification Act ("SORNA"), 18 U.S.C. § 2250(a), [Doc. 1]. Federal Defender Services of East Tennessee, Inc. ("FDS") was appointed to represent Kelly, [Doc. 7], and he was ordered detained, [Doc. 8]. Approximately two months after FDS was appointed to represent him, Kelly filed a *pro se*

---

[1]   All docket numbers refer to the docket sheet in No. 2:11-CR-87.

1

motion to appoint new counsel, alleging a litany of claims of "inadequate" representation, [Doc. 14]. After a hearing before the Magistrate Judge, new counsel, Jerry J. Fabus, Jr., was appointed, [Doc. 16]. Various pretrial motions were then filed, including a motion to dismiss raising various constitutional claims, [Doc. 28]. The motion to dismiss was heard by the Magistrate Judge and his report and recommendation that the motion be denied was filed on April 5, 2012, [Doc. 34].

On April 12, 2012, Kelly filed a notice of intent to plead guilty, while preserving his right to appeal the denial of his motion to dismiss and citing the Magistrate Judge's April 5 report and recommendation, [Doc. 36]. On April 16, 2012, an agreed factual basis was filed, [Doc.38]. Petitioner then filed, on April 19, 2012, an objection to the Magistrate Judge's report and recommendation on his motion to dismiss, [Doc. 41]. This Court overruled the objection and adopted the report and recommendation on April 30, 2012, [Doc. 43].

The United States would not consent to the entry of a conditional plea of guilty by the defendant, *see Fed. R. of Crim. P.* 11(a)(2), and the matter proceeded to a jury trial on May 24, 2012. Defendant was found guilty, [Doc. 50, 51]. A presentence investigation report ("PSR") was prepared and disclosed on November 2, 2012. On February 20, 2013, Kelly was sentenced to a term of imprisonment of 41 months followed by a 15-year term of supervised release, [Doc. 75]. Judgment was entered in the case on March 4, 2013, [Doc. 76]. Kelly then filed notices of appeal, [Docs. 78.79], and this Court's final judgment was affirmed by the Sixth Circuit Court of Appeals on March 20, 2014, [Doc. 84]. The instant § 2255 motion was then timely filed on March 3, 2015, [Doc. 100].

The Sixth Circuit set out a brief factual and procedural background in the case in its opinion.

Kelly pled guilty to one count of sexual assault on April 18, 1990, in Flagstaff, Arizona.He was sentenced to fourteen years in prison, and was released in August of 2003. On December 22, 2010, Kelly reported to the New Orleans, Louisiana Police Department ("NOPD") and registered as a sex offender. On June 8, 2011, Kelly informed the NOPD that he planned to move to Memphis, Tennessee. When the NOPD contacted the Memphis Police Department to follow up on Kelly, the NOPD was informed that Kelly did not register with Tennessee authorities. Kelly was subsequently arrested by the Cocke County, Tennessee Sheriff's Department on August 30, 2011.

Kelly was indicted on October 12, 2011, in the Eastern District of Tennessee for failing to register as a sex offender pursuant to SORNA. Kelly proceeded to trial before a jury and was found guilty on May 24, 2012. For purposes of sentencing, Kelly's base offense level was calculated to be 16 by the United States Probation Office ("USPO"). The USPO recommended that the district court find Kelly's adjusted offense level to be 18, adding a two-point enhancement for obstruction of justice. The district court sustained Kelly's objection to this enhancement, leaving his total offense level at 16. Kelly requested a two-point reduction in his total offense level for acceptance of responsibility. The district court denied this request, citing the fact that Kelly factually contested his guilt at trial.

The USPO assessed Kelly six criminal history points, placing him in criminal history category III. Those points were assessed as follows: three points for a 1989 Arizona sexual assault conviction; two points for a 2009 Arizona failure to register as a sex offender conviction; and one point for 2010 Arkansas convictions for possession of a controlled substance with intent to distribute and possession of drug paraphernalia with intent to use. Upon motion of the Government, the district court determined that criminal history category III underrepresented Kelly's actual criminal history, and enhanced his criminal history to category IV. The district court noted that, under the United States Sentencing Guidelines (the "Guidelines"), Kelly was assessed no criminal history points for convictions of attempted rape, grand larceny, assault and battery with intent to kill, and sexual assault because of the time that had elapsed since those convictions, which occurred between 1974 and 1982.

During the district court's consideration of whether an upward departure was warranted, Kelly emphasized the findings of a 2010 psychological evaluation, which concluded that his risk of recidivism was low. The district court discounted this evaluation, noting that the psychologist reached his conclusion based partly on Kelly's lack of convictions from 2005 until his 2009 arrest for

3

failure to register. During this four-year period of time, Kelly evaded his sex offender registration requirements after absconding from the custody of the Arizona State Hospital in January of 2005, where he was committed by the state for sex offender treatment. The district court questioned how the psychologist could reach his conclusion based on the facts cited, and questioned the psychologist's "objectivity" and "reliability." (Sentencing Tr. at 34, Feb. 20, 2013, Dist. Ct. Dkt., ECF No. 82.) Additionally, the district court stated that when making a decision as to whether or not it should grant an upward departure in Kelly's criminal history category, the district court only had to find that either Kelly's criminal history was underrepresented or Kelly's likelihood of recidivism was underrepresented, but was not required to find both.

For a total offense level 16 and criminal history category IV, the Guidelines range is a term of thirty-three to forty-one months' imprisonment, and a term of supervised release of five years to life. The district court sentenced Kelly to forty-one months in prison and fifteen years of *United States v. Kelly* supervised release. Kelly now challenges the procedural and substantive reasonableness of the sentence imposed by the district court.

*United States v. Kelly*, 560 F. Appx. 501, 502-03, 2014 WL 1088283 (6th Cir. 2014).

## II.    Standard of Review

This Court must vacate and set aside petitioner's sentence if it finds that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, . . ." 28 U.S.C. § 2255.    Under Rule 4 of the Governing Rules, the Court is to consider initially whether the face of the motion itself, together with the annexed exhibits and prior proceedings in the case, reveal the movant is not entitled to relief.  If it plainly appears the movant is not entitled to relief, the court may summarily dismiss the § 2255 motion under Rule 4.

When a defendant files a § 2255 motion, he must set forth facts which entitle him to relief. *Green v. Wingo,* 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961).  "Conclusions, not substantiated by allegations of fact with some probability of

verity, are not sufficient to warrant a hearing." *O'Malley*, 285 F.2d at 735 (citations omitted). A motion that merely states general conclusions of law without substantiating allegations with facts is without legal merit. *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959); *United States v. Johnson,* 940 F. Supp. 167, 171 (W.D. Tenn. 1996).

To warrant relief under 28 U.S.C. § 2255 because of constitutional error, the error must be one of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted) (§ 2254 case); *Clemmons v. Sowders*, 34 F. 3d 352, 354 (6th Cir. 1994). *See also United States v. Cappas*, 29 F.3d 1187, 1193 (7th Cir. 1994) (applying *Brecht* to a § 2255 motion). If the sentencing court lacked jurisdiction, then the conviction is void and must be set aside. *Williams v. United States*, 582 F. 2d 1039, 1041 (6th Cir.), cert. denied, 439 U.S. 988 (1978). To warrant relief for a non-constitutional error, petitioner must show a fundamental defect in the proceeding that resulted in a complete miscarriage of justice or an egregious error inconsistent with the rudimentary demands of fair procedure. *Reed v. Farley*, 512 U.S. 339, 354 (1994); *Grant v. United States*, 72 F. 3d 503, 506 (6th Cir.), cert. denied, 517 U.S. 1200 (1996). In order to obtain collateral relief under § 2255, a petitioner must clear a significantly higher hurdle than would exist on direct appeal. *United States v. Frady*, 456 U.S. 152 (1982).

## III. Analysis

Kelly raises seven grounds for relief in his original and supplemented § 2255 motions. He states these grounds as follows:

1. Ground One— Ineffective assistance of trial counsel by (a) failure to properly articulate all constitutional arguments prior to trial, (b) failure to file sufficient pre-trial motions; (c) failure to challenge jury instructions; (d) failure to subpoena Cocke County Sheriff's

5

Department Capitan Derrick Woods; (e) failure to subpoena Cocke County dispatcher; (f) failure to establish "how and when" petitioner knew that Woods had been provided the Cosby address where Kelly was arrested; (g) failure to cross-examine Detective Hughes about his vacations; (h) failure to call Kelly's wife as a witness to testify as to his "alibi," and (i) failure to challenge his Tier III base offense level.

2.      Ground Two—Ineffective assistance of appellate counsel by failing to raise (a) incorrect base offense level based on Tier III offense; (b) two point reduction in the offense level for acceptance of responsibility; (c) the Court's upward departure on the basis that it was (1) contrary to the guidelines; (2) the "facts" of defendant's 1973 juvenile offense; (3) his 1976 Indiana assault conviction; (4) "other" false information in the PRS; and (5) the government was allowed to over report petitioner's criminal history; and (d) failed to argue Due Process, Commerce Clause, Ex Post Facto, and Equal Protection challenges.

3.      Ground Three—18 U.S.C. § 2250 is unconstitutional as applied in that (a) the Court applied an automatic finding of dangerousness; and (b) the Court was estopped from finding that his 1990 conviction for sexual abuse was a dangerous offense based on the principles of *res judicita*, and collateral estoppel.

4.      Ground Four—The term of supervised release and sex offender conditions imposed by the Court were in error.

5.      Ground Five—Denial of the right to confront witnesses.

6.      Ground Six—Abuse of discretion in that the Court (a) applied the wrong base offense level based on a Tier III offense; (b) illegally departed upward; and (c) judicial bias.

7.      Ground Seven--      Prosecutorial misconduct in that the prosecution (a) misrepresented facts; (b) sought increased sentence in retaliation for defendant's exercise of his

right to trial; (c) provided false criminal history information; (d) engaged in a pattern of interrupting petitioner while he was testifying; and (e) elicited inadmissible hearsay testimony.

### A. Standard for Ineffective Assistance of Counsel Claims

When a § 2255 Petitioner claims he was denied his sixth amendment right to effective assistance of counsel, it is noted that an attorney is presumed to have provided effective assistance, and the Petitioner bears the burden of showing that the attorney did not, *Mason v. Mitchell*, 320 F.3d 604, 616-17 (6th Cir. 2003). Petitioner must prove that specific acts or omissions by his attorney were deficient and that the attorney failed to provide "reasonably effective assistance," *Strickland v. Washington,* 466 U.S. 668, 687 (1987), which is measured by "prevailing professional norms," *Rompilla v. Beard*, 545 U.S. 374, 380 (2005). If Petitioner crosses this evidentiary hurdle, he must then show "a reasonable probability that, but for [the attorney's acts or omissions], the result of the proceedings would have been different." *Strickland*, 466 U.S. at 694. In other words, he must show that he was prejudiced by the attorney's deficient representation:

> To succeed on an ineffective assistance claim, a defendant must show that counsel's deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). [A court's ] review of counsel's performance is "highly deferential." Id. at 689, 104 S.Ct. 2052. [The court must] "judge the reasonableness of the time of counsel's conduct." *Id*. at 690, 104 S.Ct. 2052. The defendant "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id*. To establish "prejudice," a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694, 104 S.Ct. 2052. "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. ——, 131 S.Ct. 770, 792, 178 L.Ed.2d 624 (2011). And, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed." *Strickland*,

7

466 U.S. at 697, 104 S.Ct. 2052.

*Docherty v. United States*, 536 Fed. Appx. 547, 551 (6th. Cir. 2013).

### B.    Ground One:  Ineffective Assistance of Trial Counsel

As best the Court can tell, petitioner makes nine allegations of ineffective of counsel related to his trial and sentencing as set forth above as GROUND ONE, subparts (a) through (i). The Court will address these claims in turn.

### 1.    Grounds One (a) and (b)

Petitioner raises both these grounds in nothing more than conclusory fashion, with no attempt to support them with allegations of fact and no developed argument.  He simply states that counsel was ineffective because of his "(a), failure to properly articulate (all) constitutional arguments prior to trial; (b) failure to file sufficient pre-trial motions."[2]  [Doc. 100 at 4].  Claims alluded to only in a perfunctory manner such as this are waived.  "Habeas Rule 2(c) . . . provides that the petition must 'specify all the grounds for relief available to petitioner' and 'state the facts supporting each ground.'"    *Mayle v. Felix*, 545 U.S. 644, 655 (2005) (citing Advisory Committee's note on subd. (c) of Habeas Corpus Rule 2, 28 U.S.C., page 469, 471); see also Rule 2 of Rules Governing § 2255 Proceedings for the United States District Courts (Governing Rules).  Kelly has failed to provide any facts to support these claims and they are subject to summary dismissal pursuant to Rule 4 of the Governing Rules.  He has not identified any constitutional arguments that could have been, but were not, raised in the motion to dismiss filed by counsel nor has he identified what other motions he claims counsel should have filed.  These bald assertions without any factual support or legal development cannot support Kelly's claims.

### 2.    Ground One (c)

---

[2]  The motion was handwritten in an all capital letters. All non-standard capitalization has been omitted.

Petitioner faults counsel for "failure to challenge jury instructions" concerning the failure of arresting officer Derrick Woods to testify at trial. [Doc. 100 at 4]. He sheds light on the claim in his amended petition where he argues that counsel should have requested a "missing witness instruction" for "main arresting officer: Captain Derrick Woods, whom should have been central to both the government and petitioners case-but was not subpoenaed by either side . . ." [Doc. 113 at 2].

A missing witness instruction is appropriate only if a two-part test is met, i.e., that (1) the witness is one "peculiarly within [the opposing party's] power to produce, and (2) the witness's testimony would "elucidate the transaction." *United States v. Frost,* 914 F.2d 756, 765 (6th Cir. 1990) (quoting *United States v. Blakemore*, 489 F.2d 193, 195 (6th Cir. 1973)). Both elements must be present and the analysis is strictly applied. *Id*.

Here, Kelly cannot meet the first part of the test and counsel cannot be faulted for failing to request the instruction. Kelly essentially concedes that Woods could have been subpoenaed by either side, but was not. Kelly has made no attempt to show that Woods, a Cocke County officer, had such a relationship with the government in their case that he was pragmatically unavailable to the defendant, regardless of his physical availability. *See Blakemore*, 489 F.2d at 195-96 n. 4. This claim is without merit.

3.      **Ground One (d), (e), (g) and (h)**

Petitioner faults counsel for failing to subpoena Cocke County Sheriff's Department Captain Derrick Woods "to impeach his credibility" and "explain 'how' he obtained the address of: 4150 Barnes Hollow Road" where petitioner was arrested. Petitioner apparently claims that he made "numerous attempts to contact the Cocke County Sex Offender officer by phone" and was referred to Captain Woods. He claims that he and his wife went personally to the

9

sheriff's department to register with Captain Woods, but he was not available, apparently suggesting that Captain Woods got the address of 4150 Barnes Hollow Road, described by petitioner as "a remote location on a mountain top, with virtually no neighbors," [Doc. 113 at 4 n. 3], from petitioner himself.

The Sixth Circuit has held that the decision whether to call a witness is "generally a matter of trial strategy and, absent a showing of prejudice, the failure to call a witness does not deprive a defendant of effective assistance of counsel." *Sumatar v. Clarridge*, 225 F. Appx. 366 (6th Cir. 2007). Indeed, failure to call a witness is **presumed** to be a matter of trial strategy and constitutes ineffective assistance of counsel only when it deprives a defendant of a substantial defense. *See Chegwideen v. Capture*, 92 F. Appx. 309, 311 (6th Cir. 2004); *Hutchinson v. Bell*, 303 F.3d 720, 749 (6th Cir. 2002). A defense is substantial if it might have made a difference in the outcome of the trial. *Matthews v. Abramajtys*, 319 F.3d 780, 790 (6th Cir. 2003) (citing *Strickland*, 466 U.S. at 693-96).

Kelly's assertion that Woods should have been called as a witness "to impeach his credibility" is a non-starter. Woods had not been called as a witness by the government, the government was under no duty to call him as a witness, and his credibility was not at issue in the case. The Court will not discuss the assertion further. Beyond that, petitioner only asserts that Woods should have been called as a witness to explain how he got the address where petitioner was arrested. Petitioner makes no real effort to show how that testimony would have been favorable to him or relevant to his defense that "uncontrollable circumstances prevented [him] from complying" with the registration requirement of SORNA. [Doc. 113 at 2].

Furthermore, Kelly himself testified as to all of these things. Counsel was not ineffective for not calling every possible witness, especially where the testimony, as here, is

10

cumulative. *See, e.g., Leija v. Elo*, 9 F. Appx. 500, 501 (6th Cir. 2001); *United States v. Pierce*, 62 F.3d 818, 833 (6th Cir. 1995). Where a petitioner "himself testified to all the facts that the additional evidence might have supported," *United States v. Foreman*, 323 F.3d 498, 504-05 (6th Cir. 2003), he cannot establish prejudice to overcome the presumption that the decision to call those witnesses was anything other than sound trial strategy.

All of this is equally true with Kelly's claim that counsel should have called his wife "to testify as an alibi witness to the 6/8/11 change of address and subsequent attempts to register in Tennessee," even though she was present after having been subpoenaed. Petitioner provides no affidavit from his wife so the exact nature of her purported testimony is unknown. To the extent she would have verified petitioner's own testimony as to his asserted efforts to register in Tennessee, he likewise cannot establish prejudice because the testimony would have been cumulative. In addition, counsel's decision not to call a family member of a defendant as a witness can clearly be attributed to trial strategy. *See Grossclose v. Bell*, 130 F.3d 1161, 1169 (6th Cir. 1997). To the extent petitioner's wife would have testified about "the 6/8/11 change of address," he fails to show what, if any, possible relevance the testimony could have had and he certainly does not show how it could have changed the outcome of the trial. Finally, petitioner's charge that counsel failed "to subpoena the Cocke County dispatcher on duty," is completely conclusory and not supported by any factual allegation or analysis and fails for that reason alone. Petitioner has not identified the witness by name, has not given the substance of any testimony the witness would have provided, and has not shown how the outcome of his trial would have been impacted.

Finally, petitioner's claim that counsel failed to properly cross-examine Detective Hughes fares no better. In our adversarial system, a defendant's right to cross-examine

government witnesses is an important safeguard. It is "the principal means by which the believability of a witness and the truth of his testimony are tested." *Davis v. Alaska*, 415 U.S. 308, 316 (1994). This, however, is not one of those cases where counsel failed to cross-examine a witness altogether, *see Higgins v. Renico*, 470 F.3d 624, 632 (6th Cir. 2006), or one where counsel failed to bring up glaring grounds for impeachment, *see Reynoso v. Guirbino*, 462 F.3d 1099, 1114 (9th Cir. 2006). Even assuming that a shrewd cross-examiner might have elicited the information Kelly says could have been elicited, or that a different questioner might have conducted a different cross-examination, Kelly cannot establish that counsel's performance failed below an objective standard for reasonableness. "[T]he Sixth Amendment guarantees competence, not perfect litigation." *Baze v. Parker*, 371 F.3d 310, 320 (6th Cir. 2004).

Decisions about whether, and to what extent to, cross-examine witnesses are almost exclusively "strategic" decisions of counsel and, as a result, are effectively insulated from review. *Hurley v. United States*, 10 F. Appx. 257, 260 (6th Cir. 2001).

### 4. Ground One (f)

In this claim, petitioner alleges that counsel failed "to establish exactly how and 'when' the petitioner knew that Captain Woods had been to the provided Cosby address to arrest him." This claim, too, is conclusory and supported by no facts or analysis. Kelly does not explain how counsel could have "established" this, how it was relevant to any issue in the case, and certainly not how it would have resulted in a different result.

### 5. Ground One (i); Ground Two (a); Ground Six (a)

Petitioner complains in these claims of counsel's "failure to challenge 'Tier Three' base offense level of SORNA." The Court agrees with the government that petitioner has not articulated any basis upon which counsel could, in good faith, have contested that classification.

"The term 'tier III sex offender' means a sex offender whose offense is . . . compatible to or more severe than," among other offenses not relevant here, "aggravated sexual abuse or sexual abuse (as described in §§ 2241 and 2242 of Title 18)." 42 U.S.C. § 16911(4). Both aggravated sexual abuse (as described in 18 U.S.C. § 2241) and sexual abuse (as described in 18 U.S.C. § 2242) require a [sexual act], which, among other things not relevant here, means:

> (A) contact between the penis and the vulva or the penis and the anus . . .;
>
> (B) contact between the mouth and the penis, the mouth and the vulva, or the mouth and the anus; [or]
>
> (C) the penetration, however slight, of the anal or genital opening of another by a hand or finger or by any object, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person . . . .

18 U.S.C. § 2246(2).

Title 18 U.S.C. § 2241 defines aggravated sexual abuse as "knowingly caus[ing] another person to engage in a sexual act—

> (1) by using force against another person; or
>
> (2) by threating or placing that other person in fear that any person will be subjected to death, serious bodily injury, or kidnapping.

18 U.S.C. § 2241. Sexual abuse is defined in § 2242 as "knowingly—

> (1) caus[ing] another person to engage in a sexual act by threatening or placing that other person in fear (other by threatening or placing that other person in fear that any person will be subjected to death, serious bodily injury, or kidnapping); or
>
> (2) engag[ing] in a sexual act with another person if that other person is—
> > (A) incapable of appraising the nature of the conduct; or
> > (B) physically incapable of declining participation in, or communicating unwillingness to engage in, that

13

sexual act . . .

18 U.S.C. § 2242. At issue here is Kelly's 1990 conviction for sexual assault in Coconino County, Flagstaff, Arizona. The underlying conduct is described in the PSR:

> According to Court records, on or about August 11, 1989, the victim went to a bar to obtain drugs. She met the defendant, and he said he would be able to obtain drugs for her. The defendant and the victim left the bar in the defendant's vehicle. The defendant stopped his vehicle; then dragged the victim out of the vehicle and into the woods. The victim began to scream, and the defendant proceeded to choke her. The defendant struck the victim with a rock on her head and fists. The victim was in fear for her life, and the defendant raped her. Following the assault, the defendant drove away and left the victim in the woods. The victim obtained help from a passing vehicle and contacted the authorities.
> :
> The defendant provided the following statement in a presentence questionnaire "[I] met an inebriated woman on August 11, 1989, who was looking for drugs; I eventually offered her a ride home, she agreed and offered sex; I agreed and shortly afterward, she became hysterical, impairing my driving, so I pulled over and physically removed her from my vehicle: I was subsequently psychologically coerced into pleading guilty by my attorney J. Stazzone of a sexual assault charge."

[PSR at ¶ 32].

Petitioner states that the conviction was designated "non-dangerous and non-repetive [sic]," referencing "Coconino County Superior Court plea agreement," a document he has not attached to his motion. [Doc. 113 at 9]. Kelly argues that §§ 2241 and 2242 "are dangerous offender statutes," and to use the Coconino County conviction to find a Tier III offense "negates the specific language of the 1990 contractual plea." [*Id.* at 10]. Even assuming that the plea agreement in the 1990 case somehow labels the offense as "non-dangerous," the agreement is binding here on neither the Court nor the government. Petitioner did not challenge the PSR statement of the facts underlying the 1990 conviction at the time of sentencing, nor does he do so now. The Court agrees with the government that dragging the victim into the woods, choking her,

14

striking her on the head with a rock and his fists, placing her in fear for her life, and then raping her is unquestionably compatible to or more severe than sexual abuse as defined in § 2242. First, the offense of conviction in Arizona requires a sexual act as defined in 18 U.S.C. § 2246(2). See A.R.S. § 13-1406(A) ("A person commits sexual assault by intentionally or knowingly engaging in sexual intercourse or oral sexual contact with any person without consent of such person."). Second, the undisputed facts, whether designated as "dangerous or non-dangerous" by a plea agreement, constitute the offense of sexual assault under § 2242 in that Kelly "caused another person to engage in a sexual act by threatening or placing that person in fear . . ." 18 U.S.C. § 2242(1).

### C.  Ground Two—Ineffective Assistance of Appellate Counsel

The *Strickland* two-part test also applies to ineffective assistance of appellate counsel. *Valentine v. United States*, 488 F.3d 325, 338 (6th Cir. 2007); *McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir. 2004). The Sixth Circuit, however, refines the *Strickland* test when applied in the appellate context. Under the first *Strickland* prong, the court must assess the strength of the claim appellate counsel failed to raise. *Valentine*, at 338. "Although appellate counsel has no obligation to raise every possible claim and the decision on which claims to raise is ordinarily entrusted to counsel's professional judgment, the failure of counsel to raise a meritorious issue can amount to constitutionally ineffective assistance." *Henness v. Bagley*, 644 F.3d 308, 317 (6th Cir. 2011) (citing *McFarland*, 356 F.3d at 710). When examining the second *Strickland* prong, the court must determine if there is a reasonable probability that the defendant would have prevailed on appeal had the claim been raised. *McFarland*, 356 F.3d at 700. Then the court can "consider whether the claim's merit was so compelling that appellate counsel's failure to raise it amounted to ineffective assistance of appellate counsel." *Id*.

15

On appeal, counsel for Kelly challenged only the procedural and substantive reasonableness of his 41 month sentence. Thus, in evaluating petitioner's claims of ineffective assistance of appellate counsel, the Court must evaluate the strength of the claim counsel failed to raise and, if meritorious, whether the outcome of the appeal would have been different.

### 1. Ground Two (a)

Although difficult to tell, petitioner apparently raises a claim of ineffective assistance of appellate counsel on the basis that counsel did not challenge the Court's finding of a base offense level of 16 because petitioner was required to register as a Tier III offender. For the reasons set forth in § III. B.5. above, the claim is not meritorious and the failure to raise it on appeal was not ineffective assistance of counsel.

### 2. Ground Two (b)

The petitioner alleges that counsel's failure to appeal the Court's denial of his claim for a two-level reduction in offense level for acceptance of responsibility under USSG § 3E1.1 was ineffective. Counsel objected to the PSR on this basis but the Court overruled the objection, after conducting a hearing. The Court's basis for overruling the objection is succinctly stated by the probation officer in the addendum to the PSR:

> Application Note 2 of the Commentary to USSG § 3E1.1, provides the "adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt." The elements of the offense are: 1) the defendant is required to register under the Sex Offender Registration and Notification Act; 2) the defendant traveled in interstate commerce; and 3) the defendant knowingly failed to register or update a registration. In the present case, the defendant's defense at trial was the government would not be able to prove he knowingly failed to register or update registration. However, the jury determined the government met its burden of proof and returned a guilty verdict. Accordingly, the defendant never entered a guilty plea, required the government to prove guilt at trial, and has failed to accept personal responsibility for his criminal conduct . . .

16

[Addendum to PSR at 2]. In addition, it was acknowledged during the sentencing hearing that Kelly had indeed challenged one of the elements of the offense at trial, [Doc. 82 at 19-20]. The petitioner cannot seriously challenge the Court's ruling and it was not ineffective assistance of counsel not to raise this issue on appeal.

### 3. Ground Two (c); Ground Six(b)

Kelly argues that counsel was ineffective on appeal for failure to argue that the Court had committed "egregious error" in granting the government's motion for upward departure based on the following: a) "contrary to Guidelines mandate, not a single document was presented by the government as 'proof' of this alleged underrepresented prior criminal history, . . . b) Mr. Fabus failed to challenge the 'facts' of petitioners 1973 juvenile offense . . .; c) "Mr. Fabus was also aware that, (1) the 1976 Indiana assault charge committed by petitioner and his co-defendant Deborah Moore, as depicted by the USPO, was 'overreported' . . . (2) there was other false information in the PSR . . .; (3) the government was allowed to also 'overreport' petitioner's criminal history . . .[;] d) Mr. Fabus failed to argue the previous due process, commerce clause, *ex post facto*, equal protection challenges . . ." [Doc. 100 at 7-9].

First, to the extent petitioner argues that the Court's decision to upwardly depart based on criminal history category was not raised on appeal, he is mistaken. Here is what the Sixth Circuit said of the claim:

> Kelly specifically argues that the district court abused its discretion in granting the Government's request for an upward departure in his criminal history category and by sentencing him at the top of the Guidelines range, resulting in a sentence that was greater than necessary to satisfy the purposes of sentencing. Section 4A1.3 of the Guidelines provides that "[i]f reliable information indicates that the defendant's criminal history category substantially underrepresents the seriousness of the defendant's criminal history *or* the likelihood that the defendant will commit

17

other crimes, an upward departure may be warranted." U.S.S.G. § 4A1.3 (emphasis added). *See also O'Georgia*, 569 F.3d at 296 ("[A] departure for the underrepresentation of a defendant's criminal history category is [sometimes] appropriate."). The district court appropriately considered the crimes for which Kelly was assessed no points in his criminal history category. These included: a 1974 attempted rape conviction, which the district court acknowledged was an offense committed by Kelly as a juvenile; a 1975 grand larceny conviction; a 1977 assault and battery with intent to kill conviction; and a 1982 fourth degree sexual assault conviction. The district court found that these offenses, two of which were sexual offenses, were serious and violent in nature, with one offense resulting in serious physical injury to the victim. The district court also noted that without an upward departure, Kelly had the maximum number of points within criminal history category III.

The district court did not abuse its discretion in granting an upward departure in the criminal history category based on these offenses. Additionally, the Guidelines did not require the district court to consider Kelly's risk of recidivism when granting an upward departure. Its determination that the seriousness of his criminal history was underrepresented was sufficient. U.S.S.G. § 4A1.3. However, the district court did consider the 2010 psychological evaluation offered by Kelly to demonstrate that his risk of recidivism was low and adequately explained why it disagreed with those conclusions. Finally, while the court is not required to find extraordinary circumstances to grant an upward departure, *Bolds*, 511 F.3d at 580-81, the district court made clear that the serious nature of Kelly's offenses and his disregard for the law, as evidenced by his persistent attempts to evade registration requirements, made this a special case warranting a higher penalty. (*See* Sentencing Tr. at 31 ("[I]f there were ever a poster child for this, for this [failure to register] law, Mr. Kelly is it.").)

[Doc. 84 at 5-6]. Issues previously litigated on appeal may not be re-litigated in a § 2255 proceeding. *United States v. Oglesby*, 55 F. Appx. 353 (6th Cir. 2003) ("issues, once decided, should be reopened only in extraordinary circumstances."). To the extent petitioner faults counsel for not making the specific arguments stated above in support of his challenge to the procedural reasonableness of his sentence in the Sixth Circuit, the Court notes that none of the arguments were made before this Court. The arguments were, therefore, waived and could not

18

have been raised on appeal, *see, e.g.*, *United States v. Universal Mgmt. Servs., Inc*., 191 F.3d 750, 759 (6th Cir. 1999) ("Because the issue was not raised in the district court below, Appellants have waived their right to argue the point on appeal." ). The specific arguments raised are also conclusory, not supported by sufficient factual allegations or legal authority. Although petitioner refers to his documents, he has produced none of them. Finally, the manner in which appellate counsel presents an issue on appeal and all the decisions about which claims are strongest and have the greatest likelihood of success are clearly matters of trial strategy for which counsel will not be criticized in hindsight.

### 4. Ground Two (d)

Petitioner makes this argument in a single sentence, simply alleging that appellate counsel "failed to argue the previous due process, commerce clause, *ex post facto*, equal protection challenges (as well as the obvious challenges of *res judicata*, collateral and equitable estoppel on previous adjudication(s) in Arizona on dangerousness . . ." [Doc. 100 at 10]. Petitioner has not articulated what additional arguments he believes counsel should have made or why these arguments were meritorious, and his claim fails under Strickland. The petitioner's constitutional claims related to his prosecution under SORNA were heard and decided by this Court and his claims overruled based on clear Sixth Circuit precedent. Counsel acknowledged before this Court that he could not make, in good faith, further arguments in support of these constitutional claims. The arguments were not meritorious and it was not ineffective assistance for counsel not to raise them on appeal.

### D. Ground Three—Constitutionality of 18 U.S.C. § 2250

Petitioner claims "[t]he federal 'SORNA' law (18 U.S.C. § 2250) and other correlating laws, (e.g.) 42 U.S.C. § 16911(4), automatically 'attach a separate finding of

dangerousness' that did not exist within 1990 Arizona predicate prior offense, for 18 U.S.C. § 2250(a) purposes." [Doc. 100 at 11]. Kelly repeats some of the same argument set out in § III. B. 5. above and also adds that a "civil adjudication" in 2010 found that he was not in need of further treatment and "would not reoffend." [*Id*. at 13]. Therefore, he argues, the issue of "dangerousness" has been litigated and the doctrines of collateral and equitable estoppel and *res adjudicata* prohibited such a finding in this case. He claims 18 U.S.C. § 2250 violates the commerce clause, the Tenth Amendment, and the due process clause. The United States responds that the claims are procedurally defaulted and, in any event, meritless. The Court agrees with the government on both grounds.

A petitioner must raise his claims on direct appeal, "[o]therwise, the claim is procedurally defaulted" for purposes of § 2255 review. *Peveler v. United States*, 269 F.3d 693, 698 (6th Cir. 2001) (citing *Bousley v. United States*, 523 U.S. 614, 621 (1998)). "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in [a § 2255 motion] only if the defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent." *Bousley*, 523 at U.S. at 622 (quotation marks omitted). Petitioner's only attempt to exercise his procedural default is to fault his appellate attorney for not raising the claims on appeal, a claim of ineffectiveness the Court has already rejected.

Petitioner's arguments about SORNA, as applied to him, are, in any event, without merit. The Congress did not, as pointed out by the government, pass SORNA to protect the public from sex offenders against children but rather to implement "a comprehensive national system for registration of <u>all</u> sex offenders." 42 U.S.C. § 16901; *see also United States v. Coleman*, 675 F.3d 615, 618 (6th Cir. 2012). In addition, SORNA does not require, or presume, a finding that an individual offender is "dangerous" to trigger a responsibility to register under

SORNA. Furthermore, petitioner offers no authority that even suggests that the government or the court are bound, under principles of *res adjudicata* or collateral estoppel, by a finding in a proceeding in a state court to which the United States is not a party. *See United States v. Walker*, 450 F. Appx. 464, 468 (6th Cir. 2011).

Petitioner's claim that SORNA violates the commerce clause, the Tenth Amendment, or the due process clause, are likewise misplaced and have been rejected by the Sixth Circuit. *See, e.g., United States v. Felts*, 674 F.3d 599, 606 (6th Cir. 2012) (holding that SORNA does not violate the Constitution's *ex post facto* clause because it merely permits "a conviction for failing to register; it does not increase the punishment for the past conviction"); *id.* at 606-08 (holding that SORNA does not violate the Tenth Amendment); *Coleman*, 675 F.3d at 619-21 (holding that SORNA does not violate the Constitution's commerce clause); *United States v. Stock*, 685 F.3d 621, 626 (6th Cir. 2012) ("SORNA does not, either directly or by necessary implication, violate the Tenth Amendment"); *United States v. Vititoe*, 2012 WL 6822056, at * 1 (6th Cir. Aug. 9, 2012) (deeming meritless a due process challenge to SORNA because the defendant had been advised of state registration requirements and that, if he left the state, he would need to register in any other state where he chose to live).

### E. Ground Four—Term of Supervised Release and Conditions

Petitioner claims to benefit from an amendment to the United States Sentencing Guidelines enacted after his sentencing and direct appeal. He now argues that he is subject to a maximum of five years of supervised release and, because a SORNA offense is not a sex offense, he is not subject to any of the special conditions generally applicable to sex offenders in this district. These claims have been fully litigated in this Court on two occasions and in the Sixth Circuit.

On July 28, 2014, petitioner filed a *pro se* motion for modification of his sentence of supervised release and to vacate the special conditions of his supervision pursuant to the Court's local rule providing for special conditions for sex offenders, [Doc. 86]. The motion was denied by the Court, [Doc. 88], and it was noted that, although the guidelines had changed, the statutory range had not and the 18 U.S.C. § 3553(a) factors had been fully considered by the Court in determining that the 15-year term of supervised release was needed. Likewise, the Court had determined that the special conditions for sex offenders were appropriate because Kelly was a sex offender, not based on his SORNA conviction, but rather on his previous criminal history. Kelly appealed the Court's order, [Doc. 89], but his appeal was dismissed by the Sixth Circuit for failure to prosecute, [Doc. 92], and this Court's order became a final order.

On August 22, 2014, a petition to revoke Kelly's term of supervised release was filed, [Doc. 90], based on the fact that Kelly had never reported to the probation office as required after his release from prison but had rather absconded from supervision. He was arrested in New Orleans, brought before the Court, and sentenced to 11 months of imprisonment and 15 years of supervised release. The term of supervised release exceeded the guidelines range of five years but was within the statutory range, which also allowed for lifetime supervision. The Court reimposed the special conditions for sex offenders. [Doc. 99]. Kelly appealed, [Doc. 102], and the Sixth Circuit affirmed on November 3, 2015, on all grounds but for two of the special conditions, [Doc. 123]. The issues raised in Ground Four have, therefore, been fully litigated and are without merit.

### F. Ground Five—Right of Confrontation

Petitioner claims that the absence of Captain Derrick Woods violated his rights under the confrontation clause of the United States Constitution. Woods, he asserts, "should of been a central figure and witness whose testimony, may have been cumulative in regards to the

absence or presence of corroborating or contradicting the testimony of other witnesses on material points." [Doc. 113 at 6]. Petitioner claims the failure of the government to call Woods "was a ploy by the government . . . to avoid impeaching Derrick Woods credibility for a failed polygraph involving illegal drug use." [*Id.*].

The Sixth Amendment's Confrontation Clause provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him," and is a bedrock procedural guarantee that applies to both federal and state prosecutions. *Pointer v. Texas*, 380 U.S. 400, 406 (1965). The confrontation clause, however, does not require the government to call all the witnesses it has against the defendant. *United States v. Moore*, 954 F.2d 379, 381 (6th Cir. 1992). The burden is ultimately on the government to prove guilt beyond a reasonable doubt and the Constitution does not constrain the government's strategic decisions about how, or through which witnesses, to prove its case. Even if the United States made a strategic decision not to call Woods as a witness because his credibility was subject to attack, which is not at all clear,[3] the Constitution does not prohibit that decision.

## G. Ground Six (c)—Judicial Bias

Petitioner claims he received a procedurally unreasonable sentence because the undersigned "was clearly upset with petitioner for his exercising a right to go to trial," [Doc. 113 at 15-16], referencing page 19, lines 5-11 of the transcript of the sentencing hearing. Petitioner takes the statements referenced in the transcript out of context, however. The Court remarked that a bench trial could have been conducted "in 30 minutes" if he had accepted the government offer to stipulate facts and submit the case to the Court without a jury to allow petitioner the opportunity to retain his right to raise his constitutional issues on appeal. The comment was made

---

[3]  It is doubtful the government made the decision not to call Woods as a "ploy" to avoid having him cross-examined about a "failed polygraph involving illegal drug use." As a general rule, the results of a polygraph examination are inadmissible. *United States v. Blakeney*, 942 F.2d 1001 (6th Cir. 1991).

by the Court in the context of petitioner's objection to the failure of the probation officer to adjust his offense level for acceptance of responsibility. Nothing in that exchange establishes any bias on the part of the Court or that the Court was upset at Kelly for going to trial. In any event, the underlying allegation, i.e., that petitioner received a procedurally unreasonable sentence, has been conclusively rejected by the Sixth Circuit's decision in the case.

Furthermore, petitioner has procedurally defaulted this claim by not raising it on direct appeal. Even if considered on the merits, however, other statements of the Court pointed to by petitioner as evidence of judicial bias fail to establish anything of the sort. While petitioner might not agree with the Court's conclusion that he is a "poster-child" for SORNA or that petitioner seemed to think he was smarter than anyone else in the courtroom, these statements do not establish any judicial bias against him. Nor is the Court's imposition of a 15-year term of supervised release, a decision the petitioner disagrees with but which has been affirmed by the Sixth Circuit, evidence of such bias. This claim is without merit.

### H. Ground Seven—Prosecutorial Misconduct

As set forth above, Kelly accuses the prosecutor of multiple instances of misconduct. As an initial matter, the claim is procedurally defaulted. If considered on the merits, however, the record establishes that the claims are unsupported by the record, except for one misstatement made, and acknowledged, by the prosecutor during the government's argument at the sentencing hearing. It is undisputed, however, that the misstatement was corrected before sentence was imposed and, in any event, was not relied upon by the Court in choosing the sentence imposed. This claim lacks merit.

## IV. Conclusion

For the reasons set forth above, the Court holds that neither petitioner's prosecution in

this court nor his sentencing was in violation of the constitution or laws of the United States and he is not entitled to an evidentiary hearing. His motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255, Docs. [88, 96], is DENIED.

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals disapproves of the issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F. 3d 466 (6th Cir. 2001). The District Court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id*. at 467. Each issue must be considered under the standard set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473, 120 S. Ct. 1595 (2000). *Id.*

Under *Slack*, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." After reviewing each of Petitioner's claims, the Court finds that reasonable jurists could not conclude that petitioner's claims are adequate to deserve further review. Because petitioner has failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue.

A separate judgment will enter.

ENTER:

s/J. RONNIE GREER<br>UNITED STATES DISTRICT JUDGE